FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 25, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FRANK M., | No. 2:17-cv-00264-MKD |
| Plaintiff, | |
| | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 15, 17 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 17. The parties consented to proceed before a magistrate judge. ECF No. 3. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion, ECF No. 15, and grants Defendant's Motion, ECF No. 17.

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in

ORDER - 3

"substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

If the claimant is found disabled at any point in this process, the ALJ must also determine if the disability continues through the date of the decision.  The Commissioner has established a multi-step sequential evaluation process for determining whether a person's disability continues or ends.  20 C.F.R. § 404.1594 (2012).[1]  This multi-step continuing disability review process is similar to the five-step sequential evaluation process used to evaluate initial claims, with additional attention as to whether there has been medical improvement.  *Compare* 20 C.F.R. § 404.1520 *with* § 404.1594(f) (2012).  A claimant is disabled only if his impairment is "of such severity that he is not only unable to do his previous work[,] but cannot,

_____

[1] Many of the regulations cited in this decision were revised effective March 27, 2017.  *See, e.g.*, Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5871 (January 18, 2017) (revising 20 C.F.R. § 404.1594).  Since the revisions were not effective at the time of the ALJ's decision, they do not apply to this case.  For revised regulations, the version effective at the time of the ALJ's decision is noted.

ORDER - 6

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

Determination of whether a person's eligibility for disability benefits continues or ends involves an eight-step process under Title II.  20 C.F.R. § 404.1594(f) (2012).  The first step addresses whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1594(f)(1) (2012).  If not, step two determines whether the claimant has an impairment or combination of impairments that meets or equals the severity of an impairment listed in 20 C.F.R. pt. 404, Subpt. P, App. 1.  20 C.F.R. § 404.1594(f)(2).  If the impairment does not meet or equal a listed impairment, the third step addresses whether there has been medical improvement in the claimant's condition.  20 C.F.R. § 404.1594(f)(3) (2012). Medical improvement is "any decrease in the medical severity" of the impairment that was present at the time the individual was disabled or continued to be disabled. 20 C.F.R. § 404.1594(b)(1) (2012).

If there has been medical improvement, at step four, it is determined whether such improvement is related to the claimant's ability to do work—that is, whether there has been an increase in the individual's residual functional capacity.  20 C.F.R. § 404.1594(f)(4) (2012).  If the answer to step four is yes, the Commissioner skips to step six and inquires whether all of the claimant's current

impairments in combination are severe. *Id.* If there has been no medical improvement or medical improvement is not related to the claimant's ability to work, the evaluation proceeds to step five. *Id.*

At step five, if there has been no medical improvement or the medical improvement is not related to the ability to do work, it is determined whether any of the special exceptions apply. 20 C.F.R. § 404.1594(f)(5) (2012). At step six, if medical improvement is shown to be related to the claimant's ability to work, it is determined whether the claimant's current impairments in combination are severe—that is, whether they impose more than a minimal limitation on the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1594(f)(6) (2012); *see also* 20 C.F.R. § 404.1521 (1985). If the step six finding is that the claimant's current impairments are not severe, the claimant is no longer considered to be disabled. 20 C.F.R. § 404.1594(f)(6) (2012).

If the step six finding is that the claimant's current impairments are severe, at step seven, a residual functional capacity finding is made and it is determined whether the claimant can perform past relevant work. 20 C.F.R. §§ 404.1594(f)(7), 404.1520(e); *see also* S.S.R. 82-61.

Finally, at step eight, if the claimant cannot perform past relevant work, the Commissioner must prove there is alternative work in the national economy that the claimant can perform given his age, education, work experience, and residual

functional capacity. 20 C.F.R. § 404.1594(f)(8) (2012). If the claimant cannot perform a significant number of other jobs, he remains disabled despite medical improvement; if, however, he can perform a significant number of other jobs, disability ceases. *Id.*

## ALJ'S FINDINGS

On July 9, 2013, Plaintiff filed an application for Title II disability insurance benefits, alleging an onset date of July 15, 2002. Tr. 188-94. After Plaintiff and Plaintiff's counsel indicated they would be open to amending the onset date, the ALJ considered March 1, 1998 as Plaintiff's alleged onset date. Tr. 20. Plaintiff does not challenge the ALJ's use of this amended onset date. ECF No. 15. The claim was denied initially, Tr. 87-92, and on reconsideration, Tr. 93-98. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on January 26, 2016. Tr. 39-86. On February 10, 2016, the ALJ denied Plaintiff's claim for benefits from March 1, 1998, to February 10, 2016. Tr. 17-38.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity prior to December 31, 2006, Plaintiff's date of last insured. Tr. 24. At step two, the ALJ found Plaintiff had the following severe impairments prior to the date of last insured: degenerative disc disease, status post two surgeries, and obesity. *Id.* At step three, the ALJ found that Plaintiff's impairments medically equaled the criteria of Listing 1.04A of 20 C.F.R. Part 404, Subpart P, Appendix 1,

from March 1998 through August 2000 and again from February 2005 through July 2006. Tr. 25. The ALJ also concluded that from September 2000 through January 2005 and from August 2006 through December 2006, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 26. The ALJ then found that medical improvement occurred from September 2000 through January 2005 and from August 2006 through December 2006. *Id.* At step four, the ALJ found Plaintiff's medical improvement was related to his ability to work because Plaintiff no longer had an impairment that met or medically equaled the severity of a listed impairment. *Id.*

Because the ALJ concluded at step four that Plaintiff's medical improvement was related to his ability to work, the ALJ proceeded to step six and found that Plaintiff's impairments were severe prior to the date of last insured. Tr. 24. At step seven, the ALJ found that from September 2000 through January 2005 and from August 2006 through the date of last insured, Plaintiff had the RFC to perform light work, with the following limitations:

> He could lift and/or carry 20 pounds occasionally and 10 pounds frequently. He had no limitation in terms of sitting. He could stand and/or walk for about six hours in an eight-hour day with regular breaks. He could never crawl or climb ladders, ropes, or scaffolds. He could occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. He had to avoid concentrated exposure to vibration and hazards.

Tr. 26.

ORDER - 10

The ALJ then determined that from September 2000 through January 2005 and from August 2006 through December 2006, Plaintiff was capable of performing past relevant work as a shipping and receiving supervisor and a counter clerk. Tr. 30. Thus, the ALJ concluded that Plaintiff was disabled, as defined in the Social Security Act, from March 1998 through August 2000 and from February 2005 through July 2006 and that Plaintiff was not under a disability from September 2000 through January 2005 or August 2006 through December 2006. Tr. 31. The ALJ also concluded Plaintiff was not eligible for disability benefit payments for Plaintiff's two periods of disability because Plaintiff filed his application more than 12 months after the month in which the disability ended. *Id.*

On June 9, 2017, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 404.981, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision terminating him disability income benefits under Title II of the Social Security Act beginning March 1, 1998. ECF No. 15. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom testimony;

2. Whether the ALJ properly evaluated the medical opinion evidence; and

1    3. Whether the ALJ properly determined that Plaintiff could perform past

2       relevant work.

3  ECF No. 15 at 8.

4                                **DISCUSSION**

5  **A. Plaintiff's Symptom Complaints**

6        Plaintiff faults the ALJ for failing to rely on reasons that were clear and

7  convincing in discrediting his symptom claims.[2]  ECF No. 15 at 15-18.  An ALJ

8  engages in a two-step analysis to determine whether a claimant's testimony

9  regarding subjective pain or symptoms is credible.  "First, the ALJ must determine

10 whether there is objective medical evidence of an underlying impairment which

11 could reasonably be expected to produce the pain or other symptoms alleged."

12 *Molina,* 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not

13 required to show that [his] impairment could reasonably be expected to cause the

14 _____

15 [2] The ALJ's evaluation of Plaintiff's symptom complaints relied on SSRs 96-4p

16 and 96-7p.  Tr. 26.  SSR 96-7p was superseded by SSR 16-3p, effective March 24,

17 2016.  SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability

18 Claims, 81 Fed. Reg. 15776, 15776 (Mar. 24, 2016).  SSR 96-4p was rescinded in

19 favor of SSR 16-3p, effective June 14, 2018.  The ALJ's opinion is dated February

20 10, 2016, and therefore predates the revised SSRs.

ORDER - 12

severity of the symptom []he has alleged; []he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue,* 572 F.3d 586, 591(9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In evaluating a claimant's symptom testimony, the ALJ may consider, *inter alia,* (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's

daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas,* 278 F.3d at 958-59.

The ALJ observed that Plaintiff testified that he was in constant pain, was unable to get out of bed at least one to two days per week due to pain, that he was unable to perform manual labor, and that his two surgeries did not result in significant improvement. Tr. 27, 63-74. The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but that Plaintiff's testimony about the intensity, persistence, and limiting effects of his symptoms were not entirely credible. Tr. 27.

### 1. Inconsistent with Objective Medical Evidence

The ALJ found Plaintiff's symptom complaints were inconsistent with the objective medical evidence in the record. Tr. 27. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §

ORDER - 14

404.1529(c)(2).  Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor.  *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Here, the ALJ found Plaintiff's symptom allegations were inconsistent with objective medical testing results during the periods of medical improvement.  Tr. 27-28; *see* Tr. 874 (September 19, 2001 MRI showed only minor foraminal stenosis at L4-5 and L5-S1, which the provider characterized as "not particularly [] significant"); Tr. 855-57 (May 30, 2002 electrodiagnostic studies revealed no evidence of lumbar motor radiculopathy, lumbosacral plexus injury, peroneal neuropathy, tibial motor neuropathy, or peripheral neuropathy involving the bilateral lower extremities); Tr. 875-76 (June 3, 2002 EMG revealed no evidence of nerve root damage and discogram revealed normal-appearing disk); Tr. 900, 977-78 (August 31, 2004 MRI revealed degenerative changes but no nerve root compression); Tr. 985 (February 9, 2005 MRI revealed notable changes indicative of worsening of low back condition); Tr. 1085 (April 3, 2008 electrodiagnostic studies were normal).

The ALJ also found that physical examinations of Plaintiff similarly did not support Plaintiff's symptom allegations during the periods of medical improvement.  Tr. 27-28; *see* Tr. 648 (September 20, 1996 examination showed full strength in manual muscle testing); Tr. 786 (March 17, 1998 examination

showed full strength but decreased sensation in lateral thigh and lateral calf and low back pain with straight leg raise); Tr. 862 (August 24, 2000 examination showed mild restriction in range of motion, normal strength, sensation, and reflexes, and negative straight leg test); Tr. 855 (May 30, 2002 examination showed no muscle atrophy, full strength in bilateral lower extremity muscles, intact sensation, and intact and symmetric deep tendon reflexes); Tr. 1421 (January 19, 2015 examination showed slightly limited range of motion). Furthermore, the ALJ noted that several independent medical examiners indicated that Plaintiff was capable of working a job with limited lifting. Tr. 28; *see* Tr. 909 (August 18, 2000); Tr. 883 (November 3, 2000); Tr. 1085 (April 3, 2008).

Plaintiff challenges the ALJ's conclusion by identifying evidence that Plaintiff argues is consistent with Plaintiff's allegations. ECF No. 15 at 16-17. Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857. Here, the ALJ reasonably concluded that the medical evidence did not support the level of impairment Plaintiff alleged. Tr. 27-28.

### 2. *Record of Improvement*

The ALJ found Plaintiff's symptom complaints were inconsistent with his record of improvement with treatment. Tr. 27-28. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20

C.F.R. § 404.1529(c)(3) (2011); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

Here, the ALJ concluded that Plaintiff's back pain showed positive responses to treatment. Tr. 27-28. Plaintiff's first back surgery occurred on January 24, 2000. Tr. 870-71. Following the surgery, Plaintiff reported an improvement in his condition. Tr. 859 (Plaintiff reported on April 13, 2000 that he was doing well after surgery, that he experienced no lower extremity symptoms, and experienced only mild back pain); Tr. 862 (Plaintiff observed on June 16, 2000 to be doing well and Dr. Blair cleared Plaintiff to work in counter sales; Plaintiff observed on August 24, 2000 to be doing well and had only mildly restricted range of motion); Tr. 852-53 (on July 13, 2000, and September 9, 2000, Plaintiff responded well to physical therapy and commented that the treatments were helping); Tr. 959 (Plaintiff reported on January 20, 2004 that his leg symptoms were "fairly well relieved" following the January 24, 2000 surgery).

After a February 2005 MRI showed worsening of Plaintiff's lower back condition, Tr. 985, Plaintiff underwent a second back surgery on January 4, 2006.

Tr. 1021-28. Two weeks after the surgery, Plaintiff reported reduced spine pain and minimal radiculopathy. Tr. 1029. On March 20, 2006, Plaintiff reported mild low back pain around the incision site, reported no radiating leg pain or radicular symptoms, and was referred to physical therapy. Tr. 1034-36. As of May 1, 2006, Plaintiff had not started physical therapy due to issues at home. Tr. 1040. On July 19, 2006, Plaintiff was observed to have a normal gait and did not use assistive devices, and Plaintiff's physical therapist opined Plaintiff could perform light work. Tr. 930, 937.

The ALJ found Plaintiff's record of improvement continued beyond his date of last insured. Tr. 28. Electrodiagnostic testing in 2008 indicated normal results, and Dr. Brzusek recommended Plaintiff return to work or to school. Tr. 1085. A September 9, 2008 examination showed full strength, intact sensation, negative straight leg tests, negative femoral stretch tests, negative Patrick's tests, and Plaintiff was recommended to pursue physical therapy, injections, and oral medication. Tr. 1088-89. On April 30, 2015, Plaintiff was managing his back pain with narcotics medications and showed a "fair response" to the treatment. Tr. 1428.

Plaintiff challenges the ALJ's conclusion by identifying evidence that Plaintiff argues is consistent with Plaintiff's allegations. ECF No. 15 at 16-17. Where the ALJ's interpretation of the record is reasonable as it is here, it should

ORDER - 18

not be second-guessed. *Rollins*, 261 F.3d at 857. Here, the ALJ reasonably concluded that the record showed a history of improvement with treatment that was inconsistent with the level of impairment Plaintiff alleged. Tr. 27-28. This was a clear and convincing reason to discredit Plaintiff's subjective symptom complaints.

### 3. Daily Activities

The ALJ found Plaintiff's daily activities were inconsistent with the specific impairments Plaintiff alleged. Tr. 28-29. A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair*, 885 F.2d at 603 (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted).

ORDER - 19

Here, the ALJ noted that Plaintiff testified that his back pain was so severe that he was unable to get out of bed one to two days per week. Tr. 67-68. However, Plaintiff reported opening his own business and self-reported pursuing conservative treatment methods to keep his symptoms manageable. Tr. 959; *see also* Tr. 65-66, 540. Plaintiff also reported taking two different trips to Alaska, for up to two weeks at a time, to visit a friend.[3] Tr. 74-75. Plaintiff rescheduled surgery on two different occasions to accommodate certain activities: once to receive help winterizing his home, and once because his goats were having babies and he sold the goats to cover farm taxes. Tr. 391. The ALJ also observed that the record did not indicate that Plaintiff missed any medical appointments due to pain symptoms, showing he was able to maintain his schedule. Tr. 29. Plaintiff also reported being active in his children's lives and caring for his elderly parents. Tr. 25, 1133-34. Plaintiff lived alone and was able to drive, take care of his home, and did his own cooking and cleaning. *Id.* Plaintiff reported walking for exercise,

---

[3] Plaintiff's motion for summary judgment indicates that Plaintiff visited Alaska only once. ECF No. 15 at 18. Plaintiff testified at the hearing that he was in Alaska "[a] couple of weeks. A week or so at a time, maybe two weeks max. I think I've only been up there once or twice. A couple of times, I actually, yeah. Maybe two times." Tr. 75.

ORDER - 20

working on his farm, and mowing grass.  Tr. 25, 1083.  The ALJ reasonably

concluded that these activities were inconsistent with Plaintiff's allegation that he

was unable to get out of bed one to two days per week.  Tr. 28-29.  This was a

clear and convincing reason to discredit Plaintiff's symptom testimony.

### 4.  Exaggerated Symptoms

The ALJ observed evidence in the record showed Plaintiff exhibited

symptom and disability exaggeration behavior.[4]  Tr. 28.  The tendency to

exaggerate provided a permissible reason for discounting Plaintiff's credibility.

*See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (the ALJ

appropriately considered Plaintiff's tendency to exaggerate when assessing

Plaintiff's credibility, which was shown in a doctor's observation that Plaintiff was

uncooperative during cognitive testing but was "much better" when giving reasons

_____

[4] Although the ALJ may not have discussed this evidence by reciting the magic

words "I discredit Plaintiff's symptom testimony because…," such an incantation

is not required.  *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989)

(reviewing court is "not deprived of our faculties for drawing specific and

legitimate inferences from the ALJ's opinion.")  The ALJ identified evidence of

Plaintiff's exaggeration behavior as part of the ALJ's discussion of how the

evidence overall did not support Plaintiff's symptom testimony.

ORDER - 21

for being unable to work.).  Here, the ALJ observed Plaintiff July 19, 2006

examination revealed positive scores for symptom and disability exaggeration,

indicating moderate to high exaggeration.  Tr. 935-36; *see also* Tr. 54, 874

(Waddell's signs indicated symptom magnification on April 10, 2001).  The ALJ

reasonably concluded that this evidence of Plaintiff exaggerating his symptoms

undermined Plaintiff's subjective symptom reporting.  Tr. 28.  Furthermore,

Plaintiff fails to challenge this finding, so argument on this issue is waived.  *See*

*Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008)

(determining Court may decline to address on the merits issues not argued with

specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not

consider on appeal issues not "specifically and distinctly argued" in the party's

opening brief).  The ALJ reasonably relied on this evidence in evaluating

Plaintiff's symptom complaints.

> 5. *Reason for Stopping Work*

The ALJ found Plaintiff's symptom complaints were less reliable because

Plaintiff stopped working for reasons other than his impairments.  Tr. 29.  An ALJ

may consider that a claimant stopped working for reasons unrelated to the

allegedly disabling condition in making a credibility determination.  *See Bruton v.*

*Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).  Plaintiff reported that he stopped

working in July 2002 because he was laid off.  Tr. 214.  The ALJ reasonably

concluded that this reason for stopping work was inconsistent with Plaintiff's testimony that he stopped work due to his back pain.  Tr. 28; *see* Tr. 63. Furthermore, Plaintiff fails to challenge the ALJ's conclusion, so argument on this issue is waived.  *See Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000.  This was a clear and convincing reason to discredit Plaintiff's symptom testimony.

### 6.  Statements of Perceived Ability

The ALJ found Plaintiff's subjective symptom complaints were inconsistent with Plaintiff's own statements regarding his ability to work.[5]  Tr. 28.  Plaintiff's own perception of his ability to work is a proper consideration in determining credibility.  *See Barnes v. Comm'r of Soc. Sec.*, No. 2:16-cv-00402-MKD, 2018 WL 545722 (E.D. Wash. Jan. 24, 2018) ("Plaintiff's testimony regarding her perceived ability to work, even if an optimistic self-assessment, is significant to the

_____

[5] Although the ALJ may not have discussed this evidence by reciting the magic words "I discredit Plaintiff's symptom testimony because…," such an incantation is not required.  *See Magallanes*, 881 F.2d at 755 (reviewing court is "not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.")  The ALJ identified evidence of Plaintiff's perceived ability to work as part of the ALJ's discussion of how the evidence overall did not support Plaintiff's symptom testimony.

ORDER - 23

extent that the Plaintiff is willing and able to work, as that belief indicates her

allegation of symptoms precluding work are not credible.").  Plaintiff reported on

November 7, 2006 that he believed he could do an indoor sales job.  Tr. 1097.  The

ALJ reasonably concluded that this was inconsistent with Plaintiff's allegation of

complete disability.  Tr. 28.  Furthermore, Plaintiff fails to challenge the ALJ's

conclusion, so argument on this issue is waived.  *See Carmickle*, 533 F.3d at 1161

n.2; *Kim*, 154 F.3d at 1000.  It was reasonable for the ALJ to consider this

evidence in evaluating Plaintiff's symptom complaints.

**B. Medical Opinion Evidence**

Plaintiff challenges the ALJ's consideration of the medical opinions of

Jaime Dominguez, M.D.; Larry Lefors, D.O.; Solomon Kamson, M.D.; John Blair,

M.D.; and David Bullock, P.T.  ECF No. 15 at 11.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a

reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight

to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830-831).

### 1. Dr. Dominguez

Dr. Dominguez, a treating physician, opined on April 22, 2015, that Plaintiff would need to lie down during the day, that regular and continuous work would cause Plaintiff's condition to deteriorate, that Plaintiff would miss an average of four days of work per month due to his impairments, and that Plaintiff was limited to sedentary work. Tr. 1415-16. The ALJ gave this opinion little weight. Tr. 29.

Because Dr. Dominguez's opinion was contradicted by Dr. Brovender, Tr. 53-55,

Dr. Brzusek, Tr. 1085, and Plaintiff's physical therapist, Tr. 937, the ALJ was

required to provide specific and legitimate reasons for rejecting this opinion.

*Bayliss*, 427 F.3d at 1216.

The ALJ found Dr. Dominguez's opinion was inconsistent with the medical

evidence in several ways. Tr. 29-30. Relevant factors to evaluating any medical

opinion include the amount of relevant evidence that supports the opinion and the

consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504

F.3d at 1042; *Orn*, 495 F.3d at 631. An ALJ may discredit physicians' opinions

that are unsupported by the record as a whole. *Batson v. Comm'r of Soc. Sec.*

*Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

First, the ALJ found this opinion was inconsistent with the objective medical

evidence showing medical improvement in 2006. Tr. 29; *compare* Tr. 985

(February 9, 2005 MRI revealed notable changes indicative of worsening of low

back condition); *with* Tr. 1085 (April 3, 2008 electrodiagnostic studies were

normal). Second, the ALJ found this opinion was inconsistent with Plaintiff's

performance on physical examinations showing medical improvement in 2006. Tr.

29-30; *see* Tr. 1421 (January 19, 2015 examination showed slightly limited range

of motion). Third, the ALJ found this opinion was inconsistent with Plaintiff's

record of improvement with treatment in 2006. Tr. 29-30; *see* Tr. 1029 (Plaintiff

reported reduced spine pain and minimal radiculopathy two weeks after his

January 2006 surgery); Tr. 1034-36 (Plaintiff in March 2006 reported mild low

back pain around the incision site, no radiating leg pain or radicular symptoms, and

was referred to physical therapy); Tr. 1040 (Plaintiff had not started physical

therapy in May 2006 due to issues at home); Tr. 930, 937 (Plaintiff observed in

July 2006 to have normal gait and did not use assistive devices; Plaintiff's physical

therapist opined Plaintiff could perform light work).

The ALJ reasonably concluded that the objective imaging, physical

examination results, and record of improvement were inconsistent with the

limitations Dr. Dominguez opined. Tr. 29. Plaintiff offers evidence in the record

that Plaintiff contends Dr. Dominguez's opinion. ECF No. 15 at 12-14. However,

the Court may not reverse the ALJ's decision based on Plaintiff's disagreement

with the ALJ's interpretation of the record. *See Tommasetti*, 533 F.3d at 1038

("[W]hen the evidence is susceptible to more than one rational interpretation" the

court will not reverse the ALJ's decision). Because the ALJ's interpretation of the

evidence was reasonable, the Court defers to the ALJ's findings. The

inconsistency with the medical evidence provided specific and legitimate reason to

discredit Dr. Dominguez's opinion.

Fourth, the ALJ found this opinion was rendered after the date of last

insured and was therefore outside the relevant period of this claim. Tr. 30.

Evidence from outside the relevant period in a case is of limited relevance. *Carmickle*, 533 F.3d at 1165; *see also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (date of social worker's opinion, rendered outside the relevant period between the alleged onset date and the date of last insured, was a germane reason to not address the opinion). Plaintiff's date of last insured was December 31, 2006. Tr. 20. The ALJ found medical improvement occurred from August 2006 through the date of last insured in December 2006. Tr. 26. Dr. Dominguez's opinion was rendered on April 22, 2015. Tr. 1415-16. Plaintiff asserts that Dr. Dominguez's opinion is relevant to establishing whether Plaintiff's impairments persisted past July 31, 2006, after which the ALJ found medical improvement occurred. ECF No. 15 at 14-15. However, this medical opinion from 2015 does not establish whether Plaintiff's impairments persisted between August 2006, the date of medical improvement, and December 2006, the date of last insured. The ALJ reasonably found Dr. Dominguez's opinion was entitled to less weight because it was rendered outside the relevant period in this case. Tr. 29. This was a clear and convincing reason to discredit Dr. Dominguez's opinion.

### 2. Dr. Lefors

Dr. Lefors, a treating physician, opined on April 3, 2007, January 4, 2011, and during monthly visits from January 2012 to October 2012 that Plaintiff was not able to obtain nor maintain meaningful reasonably continuous employment in the

real world or work as a result of his work related injury; that improvement in

Plaintiff's condition was unlikely; that Plaintiff could not perform repetitive lifting,

bending, or twisting; and that Plaintiff needed to sit, stand, move around, and take

breaks as needed. Tr. 578-605, 1140, 1344. The ALJ assigned these opinions little

weight. Tr. 29. Because Dr. Lefors' opinions were contradicted by Dr. Brovender,

Tr. 53-55, Dr. Brzusek, Tr. 1085, and Plaintiff's physical therapist, Tr. 937, the

ALJ was required to provide specific and legitimate reasons for rejecting these

opinions. *Bayliss*, 427 F.3d at 1216.

The ALJ found Dr. Lefors' opinions were inconsistent with the medical

evidence in several ways. Tr. 29-30. Relevant factors to evaluating any medical

opinion include the amount of relevant evidence that supports the opinion and the

consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504

F.3d at 1042; *Orn*, 495 F.3d at 631. An ALJ may discredit physicians' opinions

that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195.

First, the ALJ found these opinions were inconsistent with the objective

medical evidence showing medical improvement in 2006. Tr. 29; *see* Tr. 1085

(April 3, 2008 electrodiagnostic studies were normal). Second, the ALJ found

these opinions were inconsistent with Plaintiff's performance on physical

examinations showing medical improvement in 2006. Tr. 29-30; *see* Tr. 1421

(January 19, 2015 examination showed slightly limited range of motion). Third,

the ALJ found these opinions were inconsistent with Plaintiff's record of improvement with treatment. Tr. 29-30; *see* Tr. 959 (Plaintiff reported on January 20, 2004 that his leg symptoms were "fairly well relieved" following the January 24, 2000 surgery); Tr. 1029 (Plaintiff reported reduced spine pain and minimal radiculopathy two weeks after his January 2006 surgery); Tr. 1034-36 (Plaintiff in March 2006 reported mild low back pain around the incision site, no radiating leg pain or radicular symptoms, and was referred to physical therapy); Tr. 1040 (Plaintiff had not started physical therapy in May 2006 due to issues at home); Tr. 930, 937 (Plaintiff observed in July 2006 to have normal gait and did not use assistive devices; Plaintiff's physical therapist opined Plaintiff could perform light work).

The ALJ reasonably concluded that the objective imaging, physical examination results, and record of improvement were inconsistent with the limitations Dr. Lefors opined. Tr. 29. Plaintiff offers evidence in the record that Plaintiff contends supports Dr. Lefors' opinions. ECF No. 15 at 12-14. However, the Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision). Because the ALJ's interpretation of the evidence was reasonable, the Court defers to the ALJ's findings. The

inconsistency with the medical evidence provided specific and legitimate reason to discredit Dr. Lefors' opinions.

Fourth, the ALJ found these opinions were rendered after the date of last insured and were therefore outside the relevant period of this claim. Tr. 30. Evidence from outside the relevant period in a case is of limited relevance. *Carmickle*, 533 F.3d at 1165; *see also Turner*, 613 F.3d at 1223-24 (date of social worker's opinion, rendered outside the relevant period between the alleged onset date and the date of last insured, was a germane reason to not address the opinion). Plaintiff's date of last insured was December 31, 2006. Tr. 20. Dr. Lefors' opinions were rendered between April 2007 and October 2012. Tr. 578-605, 1140, 1344. Plaintiff asserts that Dr. Lefors' opinions are relevant to establishing whether Plaintiff's impairments persisted past July 31, 2006, after which the ALJ found medical improvement occurred. ECF No. 15 at 14-15. However, these medical opinions from between 2007 and 2012 do not establish whether Plaintiff's impairments persisted between August 2006, the date of medical improvement, and December 2006, the date of last insured. The ALJ reasonably found Dr. Lefors' opinions were entitled to less weight because they were rendered outside the relevant period in this case. Tr. 29. This was a clear and convincing reason to discredit Dr. Lefors' opinions.

Fifth, the ALJ found these opinions were rendered on an issue reserved to the Commissioner. Tr. 30. A statement by a medical source that a claimant is "unable to work" is not a medical opinion and is not due any special significance. 20 C.F.R. § 404.1527(d). Nevertheless, the ALJ is required to "carefully consider medical source opinions about any issue, including opinion about issues that are reserved to the Commissioner." S.S.R. 96-5p at *2. "If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." *Id.* at *3. Dr. Lefors' opinions that Plaintiff was unable to work were opinions on an issue reserved to the Commissioner. For the reasons discussed *supra*, the ALJ adequately evaluated the evidence in the record and determined that it did not support Dr. Lefors' opinions. Thus, the ALJ properly gave less weight to Dr. Lefors' opinions that Plaintiff was unable to work.

Sixth, the ALJ found these opinions were based on Department of Labor and Industries (L&I) claims, which utilize different regulations than Social Security claims. Tr. 30. The ALJ may consider a medical provider's familiarity with "disability programs and their evidentiary requirements" when evaluating a medical opinion. *Orn*, 495 F.3d at 631. Specifically, the ALJ noted that L&I claims consider whether the claimant is capable of returning to the job of injury,

whereas Social Security disability claims consider whether the claimant is capable of work based on a specifically formulated RFC. Tr. 30. However, it is not clear from the face of Dr. Lefors' opinions whether Dr. Lefors relied on L&I definitions in opining that Plaintiff was not capable of working. Tr. 578-605, 1140, 1344. Even if the ALJ erred in this finding, such error is harmless because the ALJ provided several other clear and convincing reasons to discredit Dr. Lefors' opinions. *Molina*, 674 F.3d at 1115.

### 3. Dr. Kamson

Dr. Kamson, a treating physician, opined on March 10, 2004, April 15, 2004, September 7, 2004, and January 8, 2005, that Plaintiff was unable to work. Tr. 966, 969, 973, 979-80. The ALJ gave these opinions little weight. Tr. 29. Because Dr. Kamson's opinions were contradicted by Dr. Brovender, Tr. 53-55, Dr. Brzusek, Tr. 1085, Plaintiff's physical therapist, Tr. 937, and several independent medical examiners, Tr. 883, 909, the ALJ was required to provide specific and legitimate reasons for rejecting these opinions. *Bayliss*, 427 F.3d at 1216.

The ALJ found Dr. Kamson's opinions were inconsistent with the medical evidence in several ways. Tr. 29-30. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504

ORDER - 33

F.3d at 1042; *Orn*, 495 F.3d at 631. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195.

First, the ALJ found these opinions were inconsistent with the objective medical evidence during the periods of medical improvement. Tr. 29; *see* Tr. 874 (September 19, 2001 MRI showed only minor foraminal stenosis at L4-5 and L5-S1, which the provider characterized as "not particularly [] significant"); Tr. 855-57 (May 30, 2002 electrodiagnostic studies revealed no evidence of lumbar motor radiculopathy, lumbosacral plexus injury, peroneal neuropathy, tibial motor neuropathy, or peripheral neuropathy involving the bilateral lower extremities); Tr. 875-76 (June 3, 2002 EMG revealed no evidence of nerve root damage and discogram revealed normal-appearing disk); Tr. 900, 977-78 (August 31, 2004 MRI revealed degenerative changes but no nerve root compression); Tr. 985 (February 9, 2005 MRI revealed notable changes indicative of worsening of low back condition).

Second, the ALJ found these opinions were inconsistent with Plaintiff's performance on physical examinations during the periods of medical improvement. Tr. 29-30; *see* Tr. 648 (September 20, 1996 examination showed full strength in manual muscle testing); Tr. 786 (March 17, 1998 examination showed full strength but decreased sensation in lateral thigh and lateral calf and low back pain with straight leg raise); Tr. 862 (August 24, 2000 examination showed mild restriction

in range of motion, normal strength, sensation, and reflexes, and negative straight leg test); Tr. 855 (May 30, 2002 examination showed no muscle atrophy, full strength in bilateral lower extremity muscles, intact sensation, and intact and symmetric deep tendon reflexes).

Third, the ALJ found these opinions were inconsistent with Plaintiff's record of improvement with treatment. Tr. 29-30; *see* Tr. 859 (Plaintiff reported on April 13, 2000 that he was doing well after surgery, that he experienced no lower extremity symptoms, and experienced only mild back pain); Tr. 862 (Plaintiff observed on June 16, 2000 to be doing well and Dr. Blair cleared Plaintiff to work in counter sales; Plaintiff observed on August 24, 2000 to be doing well and had only mildly restricted range of motion); Tr. 852-53 (on July 13, 2000, and September 9, 2000, Plaintiff responded well to physical therapy and commented that the treatments were helping); Tr. 959 (Plaintiff reported on January 20, 2004 that his leg symptoms were "fairly well relieved" following the January 24, 2000 surgery); Tr. 1029 (Plaintiff reported reduced spine pain and minimal radiculopathy two weeks after his January 2006 surgery); Tr. 1034-36 (Plaintiff in March 2006 reported mild low back pain around the incision site, no radiating leg pain or radicular symptoms, and was referred to physical therapy); Tr. 1040 (Plaintiff had not started physical therapy in May 2006 due to issues at home); Tr. 930, 937 (Plaintiff observed in July 2006 to have normal gait and did not use

ORDER - 35

assistive devices; Plaintiff's physical therapist opined Plaintiff could perform light work).

The ALJ reasonably concluded that the objective imaging, physical examination results, and record of improvement were inconsistent with the limitations Dr. Kamson opined. Tr. 29. Plaintiff offers evidence in the record that Plaintiff contends supports Dr. Kamson's opinions. ECF No. 15 at 12-14. However, the Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision). Because the ALJ's interpretation of the evidence was reasonable, the Court defers to the ALJ's findings. The inconsistency with the medical evidence provided specific and legitimate reason to discredit Dr. Kamson's opinions.

Fourth, the ALJ found these opinions were based on L&I claims, which utilize different regulations than Social Security claims. Tr. 30. The ALJ may consider a medical provider's familiarity with "disability programs and their evidentiary requirements" when evaluating a medical opinion. *Orn*, 495 F.3d at 631. Specifically, the ALJ noted that L&I claims consider whether the claimant is capable of returning to the job of injury, whereas Social Security disability claims consider whether the claimant is capable of work based on a specifically

formulated RFC. Tr. 30. However, it is not clear from the face of Dr. Kamson's

opinions whether Dr. Kamson relied on L&I definitions in opining that Plaintiff

was not capable of working. Tr. 966, 969, 973, 979-80. Notably, Dr. Kamson

opined Plaintiff was precluded from "any occupational duties," not just those of his

job of injury. *See* Tr. 979. Even if the ALJ erred in this finding, such error is

harmless because the ALJ provided several other clear and convincing reasons to

discredit Dr. Lefors' opinions. *Molina*, 674 F.3d at 1115.

### 4. Dr. Blair

Dr. Blair, a treating physician, opined on September 19, 2001, that Plaintiff

would not be capable of full time gainful employment. Tr. 874. The ALJ gave this

opinion little weight. Tr. 29. Because Dr. Blair's opinion was contradicted by Dr.

Brovender, Tr. 53-55, and several independent medical examiners, Tr. 883, 909,

the ALJ was required to provide specific and legitimate reasons for rejecting this

opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ found Dr. Blair's opinion was inconsistent with the medical

evidence in several ways. Tr. 29-30. Relevant factors to evaluating any medical

opinion include the amount of relevant evidence that supports the opinion and the

consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504

F.3d at 1042; *Orn*, 495 F.3d at 631. An ALJ may discredit physicians' opinions

that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195.

First, the ALJ found this opinion was inconsistent with the objective medical evidence during the periods of medical improvement.  Tr. 29; *see* Tr. 874 (September 19, 2001 MRI showed only minor foraminal stenosis at L4-5 and L5-S1, which the provider characterized as "not particularly [] significant"); Tr. 855-57 (May 30, 2002 electrodiagnostic studies revealed no evidence of lumbar motor radiculopathy, lumbosacral plexus injury, peroneal neuropathy, tibial motor neuropathy, or peripheral neuropathy involving the bilateral lower extremities); Tr. 875-76 (June 3, 2002 EMG revealed no evidence of nerve root damage and discogram revealed normal-appearing disk); Tr. 900, 977-78 (August 31, 2004 MRI revealed degenerative changes but no nerve root compression).

Second, the ALJ found this opinion was inconsistent with Plaintiff's performance on physical examinations during the periods of medical improvement. Tr. 29-30; *see* Tr. 648 (September 20, 1996 examination showed full strength in manual muscle testing); Tr. 786 (March 17, 1998 examination showed full strength but decreased sensation in lateral thigh and lateral calf and low back pain with straight leg raise); Tr. 862 (August 24, 2000 examination showed mild restriction in range of motion, normal strength, sensation, and reflexes, and negative straight leg test); Tr. 855 (May 30, 2002 examination showed no muscle atrophy, full strength in bilateral lower extremity muscles, intact sensation, and intact and symmetric deep tendon reflexes).

ORDER - 38

Third, the ALJ found this opinion was inconsistent with Plaintiff's record of improvement with treatment. Tr. 29-30; *see* Tr. 859 (Plaintiff reported on April 13, 2000 that he was doing well after surgery, that he experienced no lower extremity symptoms, and experienced only mild back pain); Tr. 862 (Plaintiff observed on June 16, 2000 to be doing well and Dr. Blair cleared Plaintiff to work in counter sales; Plaintiff observed on August 24, 2000 to be doing well and had only mildly restricted range of motion); Tr. 852-53 (on July 13, 2000, and September 9, 2000, Plaintiff responded well to physical therapy and commented that the treatments were helping); Tr. 959 (Plaintiff reported on January 20, 2004 that his leg symptoms were "fairly well relieved" following the January 24, 2000 surgery); Tr. 1029 (Plaintiff reported reduced spine pain and minimal radiculopathy two weeks after his January 2006 surgery); Tr. 1034-36 (Plaintiff in March 2006 reported mild low back pain around the incision site, no radiating leg pain or radicular symptoms, and was referred to physical therapy); Tr. 1040 (Plaintiff had not started physical therapy in May 2006 due to issues at home); Tr. 930, 937 (Plaintiff observed in July 2006 to have normal gait and did not use assistive devices; Plaintiff's physical therapist opined Plaintiff could perform light work).

The ALJ reasonably concluded that the objective imaging, physical examination results, and record of improvement were inconsistent with the

limitations Dr. Blair opined. Tr. 29. Plaintiff offers evidence in the record that Plaintiff contends supports Dr. Blair's opinion. ECF No. 15 at 12-14. However, the Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision). Because the ALJ's interpretation of the evidence was reasonable, the Court defers to the ALJ's findings. The inconsistency with the medical evidence provided specific and legitimate reason to discredit Dr. Blair's opinion.

### 5. Mr. Bullock

Mr. Bullock, a treating physical therapist, opined on November 7, 2006, that Plaintiff could sit for one hour at a time and four hours in an eight hour day; could stand for 30 minutes at a time and two hours in an eight hour day; could walk for 15 minutes at a time and one hour in an eight hour day; could alternatively sit, stand, or walk for seven hours at a time and seven hours in an eight hour day; could lift and carry no more than 26 pounds seldomly and 13 pounds occasionally; could seldomly squat, kneel, bend/stoop, crouch, climb stairs or ladders, and reach overhead with weight; could occasionally perform fine manipulation, operate foot controls, and operate hand controls; and that Plaintiff's functional abilities were insufficient for gainful employment. Tr. 1094, 1104. Mr. Bullock examined

Plaintiff again and opined on June 11, 2009, that Plaintiff could sit for one hour at a time and four hours in an eight hour day; could stand for 20 minutes at a time and one and a half hours in an eight hour day; could walk for 15 minutes at a time and one hour in an eight hour day; could alternatively sit, stand, or walk for six and a half hours at a time and six and a half hours in an eight hour day; could lift up to 38 pounds seldomly and 19 pounds occasionally; could carry 28 pounds seldomly and 14 pounds occasionally; could seldomly squat, kneel, bend/stoop, crouch, climb stairs or ladders, and reach overhead; and could occasionally operate foot and hand controls. Tr. 1111. The ALJ gave these opinions little weight. Tr. 29.

Medical sources are divided into two categories: "acceptable" and "not acceptable." 20 C.F.R. § 404.1502. Mr. Bullock does not qualify as an acceptable medical source. *Id.* (Acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants). An ALJ is required to consider evidence from non-acceptable medical sources. 20 C.F.R. § 404.1527(f).[6]

_____

[6] Prior to March 27, 2017, the requirement that an ALJ consider evidence from non-acceptable medical sources was located at 20 C.F.R. § 404.1513(d).

ORDER - 41

An ALJ must give reasons "germane" to each source in order to discount evidence from non-acceptable medical sources. *Ghanim*, 763 F.3d at 1161.

The ALJ found Mr. Bullock's opinion was inconsistent with the medical evidence in several ways. Tr. 29-30. Inconsistency with the medical evidence is a germane reason for rejecting lay witness testimony. *See Bayliss*, 427 F.3d at 1218; *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (germane reasons include inconsistency with medical evidence, activities, and reports).

First, the ALJ found Mr. Bullock's opinion was inconsistent with the objective clinical findings during the periods of medical improvement. Tr. 29; *see* Tr. 1085 (April 3, 2008 electrodiagnostic studies were normal). Second, the ALJ found Mr. Bullock's opinions were inconsistent with Plaintiff's performance on physical examinations during the periods of medical improvement. Tr. 29. Tr. 1421 (January 19, 2015 examination showed slightly limited range of motion). Third, the ALJ found Mr. Bullock's opinions were inconsistent with Plaintiff's record of improvement with treatment. Tr. 29-30; *see* Tr. 1029 (Plaintiff reported reduced spine pain and minimal radiculopathy two weeks after his January 2006 surgery); Tr. 1034-36 (Plaintiff in March 2006 reported mild low back pain around the incision site, no radiating leg pain or radicular symptoms, and was referred to physical therapy); Tr. 1040 (Plaintiff had not started physical therapy in May 2006 due to issues at home); Tr. 930, 937 (Plaintiff observed in July 2006 to have

normal gait and did not use assistive devices; Plaintiff's physical therapist opined

Plaintiff could perform light work).

The ALJ reasonably concluded that the objective imaging, physical

examination results, and record of improvement were inconsistent with the

limitations Mr. Bullock opined. Tr. 29. Plaintiff offers evidence in the record that

Plaintiff contends supports Mr. Bullock's opinions. ECF No. 15 at 12-14.

However, the Court may not reverse the ALJ's decision based on Plaintiff's

disagreement with the ALJ's interpretation of the record. *See Tommasetti*, 533

F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational

interpretation" the court will not reverse the ALJ's decision). Because the ALJ's

interpretation of the evidence was reasonable, the Court defers to the ALJ's

findings. The inconsistencies between Mr. Bullock's opinions and the medical

evidence provided germane reason to discredit Mr. Bullock's opinions.

**C. Past Relevant Work**

Plaintiff challenges the ALJ's finding that Plaintiff was capable of

performing past relevant work as a shipping and receiving supervisor and a counter

clerk. ECF No. 15 at 18-20. At the fourth step of the sequential evaluation

process, the claimant has the burden "to prove that he cannot perform his prior

relevant work either as actually performed or as generally performed in the

national economy." *Carmickle*, 533 F.3d at 1166 (citing *Lewis v. Barnhart*, 281

F.3d 1081, 1083 (9th Cir. 2002) (internal quotation marks omitted)). Past relevant work is work that was "done within the last 15 years, lasted long enough for [claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a). Substantial gainful activity is work activity that "involves doing significant physical or mental activities" on a full- or part-time basis, and "is the kind of work usually done for pay or profit." 20 C.F.R. § 404.1572. Generally, if a claimant works for substantial earnings as described in the regulations, the work is found to be substantial gainful activity. 20 C.F.R. § 404.1574(a).

First, Plaintiff contends the ALJ's step four finding is based on an improper RFC formulation. ECF No. 15 at 19. However, Plaintiff's argument is based on the assumption that the ALJ erred in considering the medical opinion evidence and Plaintiff's symptom claims. *Id.* For reasons discussed throughout this decision, the ALJ's consideration of Plaintiff's symptom claims and consideration of the medical opinion evidence are legally sufficient and supported by substantial evidence. Thus, the ALJ did not err in assessing the RFC or finding Plaintiff capable of performing past relevant work.

Second, Plaintiff challenges the ALJ's finding that Plaintiff was able to perform past relevant work as it was actually performed. ECF No. 15 at 19-20. At the fourth step of the sequential evaluation process, the claimant has the burden "to prove that he cannot perform his prior relevant work either as actually performed

or as generally performed in the national economy." *Carmickle*, 533 F.3d at 1166 (citing *Lewis*, 281 F.3d at 1083 (internal quotation marks omitted)). The ALJ found Plaintiff was capable of performing past relevant work as a shipping and receiving supervisor and as a counter clerk. Tr. 30. In making this finding, the ALJ found Plaintiff had the RFC to perform light work with additional limitations. Tr. 26. The ALJ then found, based on the vocational expert's testimony, that Plaintiff's past work as a shipping and receiving supervisor is classified as light work generally and was medium work as Plaintiff performed it, and that counter clerk work was classified as light work. Tr. 30, 82-84. The vocational expert testified that an individual with Plaintiff's RFC would be able to perform the jobs of shipping and receiving supervisor and counter clerk as they are generally performed. Tr. 84. Based on the vocational expert's testimony, the ALJ reasonably concluded that Plaintiff was capable of performing past relevant work as it is generally performed. Tr. 30; *see Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) ("We have never required explicit findings at step four regarding a claimant's past work both as generally performed *and* as actually performed") (emphasis in original). Even if the ALJ erred in finding that Plaintiff was capable of performing his past relevant work as a shipping and receiving supervisor as he actually performed it, at the medium exertional level, such error is harmless because the ALJ's finding that Plaintiff could perform this work as it is generally

performed is consistent with the ALJ's RFC formulation. Therefore, the finding is inconsequential to the disability determination process. *Molina*, 674 F.3d at 1115. The ALJ's finding that Plaintiff was capable of performing past relevant work is free from harmful legal error.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 15, is DENIED.

2. Defendant's Motion for Summary Judgment, ECF No. 17, is GRANTED.

3. The Court enter JUDGMENT in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and CLOSE THE FILE.

DATED September 25, 2018.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 46